# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 15-CR-0168-CVE |
| | ) | (18-CV-0286-CVE-FHM) |
| ABRAHAM MARTINEZ, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

On May 24, 2018, defendant Abraham Martinez, a federal prisoner appearing pro se, filed a motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Dkt. # 65). Section 2255 provides that "a prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or law of the United States . . . may move the court which imposed the sentence to vacate, set aside or correct the sentence."

### I.

On November 2, 2015, a grand jury returned a one-count indictment charging defendant with possession of a destructive device, without registering the device in the National Firearms Registration and Transfer Record, in violation of 26 U.S.C. §§ 5861(d), 5871. Dkt. # 4. Defendant was arrested and made his initial appearance on November 4, 2015. Dkt. # 11. Defendant was found to be indigent, and the Court appointed Julie Lynn O'Connell, Federal Public Defender, to represent him. Dkt. # 12.

On December 3, 2015, defense counsel filed an unopposed motion for determination of competency due to serious concerns about defendant's mental health.[1] Dkt. # 20. Plaintiff did not object to defense counsel's motion. Id. The magistrate judge found that the matter should be set for hearing, and in the meantime, referred defendant for psychiatric and/or psychological treatment and an examination. Dkt. ## 22, 23. Defendant was sent to FCI-Englewood for an examination by Jessica Micono, Psy. D., and she submitted a sealed medical evaluation report, Dkt. # 26, opining that there is "a mental disorder that substantially impairs his present ability to understand the nature and consequences of the court proceedings against him, and his ability to properly assist counsel in his defense." Id. at 1. On February 17, 2016, based on the sealed medical evaluation report and without objection, the magistrate judge found that defendant was incompetent to stand trial and was (then) presently suffering from a mental disease or defect rendering him mentally incompetent. Dkt. # 30. The magistrate judge committed defendant to the custody of the Attorney General for care and treatment for the purpose of restoration to competency. Id. On August 12, 2016, a second sealed

---

[1]
> Determining whether an accused is competent to stand trial is a three step process. *See generally United States v. Deters*, 143 F.3d 577, 579-80 (10th Cir. 1998) (reviewing the process). First, if there is "reasonable cause to believe the defendant may presently be suffering from a mental disease or defect rendering him mentally incompetent," the court may order a psychiatric or psychological examination of the defendant. 18 U.S.C. § 4241(a). At the second stage, the court uses the psychological report and conducts a hearing to determine whether the defendant is competent. If the defendant is not found to be competent, the court must order the defendant hospitalized for up to four months to determine whether the defendant will become competent in the foreseeable future. The court may order additional hospitalization if it finds there is a substantial probability that within the additional time, the defendant will become competent. *See id.* § 4241(d). At the third stage, after the specific period of confinement has expired, the court determines whether the defendant is competent and thus ready to stand trial. . . .

United States v. Boigegrain, 155 F.3d 1181, 1184 n.1 (10th Cir. 1998).

medical evaluation report was filed, opining that defendant still remained incompetent to proceed in his criminal case. Dkt. # 36. It was recommended that an additional reasonable period of time would be sufficient to restore defendant to competency. Id. at 2. The magistrate judge granted a 120-day continuance for additional restoration of competence, and reset the competency hearing. Dkt. # 38. On February 23, 2017, a third sealed medical evaluation report was filed, Dkt. # 46, which opined that defendant was mentally competent to stand trial, and had the mental capacity to understand the legal proceedings against him. Id. On March 1, 2017, a competency hearing was held. Dkt. # 47. Based on the third sealed medical evaluation report and without objection, the magistrate judge found defendant competent to stand trial. Dkt. ## 47, 51.

On May 1, 2017, defendant pleaded guilty pursuant to a Rule (c)(1)(C) plea agreement with plaintiff, which included an agreed sentence of seventy-two months imprisonment. Dkt. # 56. The plea agreement contained an appellate and post-conviction waiver, wherein defendant agreed, inter alia, to knowingly and voluntarily waive the right to "collaterally attack the conviction and sentence pursuant to 28 U.S.C. § 2255, except for claims of ineffective assistance of counsel." Id., at 3. He "expressly acknowledge[d] that counsel ha[d] explained his appellate and post-conviction rights; that the defendant underst[ood] his rights; and that the defendant knowingly and voluntarily waive[d] those rights as set forth above." Id. at 4. Additionally, defendant admitted in the plea agreement to committing the offense charged in the indictment. Id. at 7. Defendant stated:

> I, ABRAHAM MARTINEZ, admit that on August 11, 2015, in the Northern District of Oklahoma, I knowingly possessed a destructive device that was not registered with the National Firearms Registration and Transfer Record. On that day, I possessed a "Molotov cocktail," made of a bottle that contain[ed] gasoline and a rag, which I knew would burn when lit. My attorney informed me that a "Molotov cocktail" is a destructive device under the law. I did not register it with the National Firearms Registration and Transfer Record.

Id. at 7. In the plea agreement, defendant signed and acknowledged that

> [I have] read this agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully understand my rights with respect to sentencing which may apply to my case. No other promises or inducements have been made to me, other than those contained in this pleading. In addition, no one has threatened or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

Id. at 15. Defendant also signed a petition to enter a plea of guilty, which states that, "I believe that my attorney has done all that anyone could do to counsel and assist me, AND I AM SATISFIED WITH THE ADVICE AND HELP [S]HE HAS GIVEN ME." Dkt. # 58, at 4 (emphasis in original). In addition, defendant admitted the elements of the offense to which he was pleading guilty and the facts related thereto. Id. at 2.

At the change of plea hearing, the Court asked defendant if he had been treated recently for mental illness, and defendant acknowledged that he had been. Dkt. # 71, at 8. However, defendant acknowledged that counseling without psychotropic medications helped change his behavior. Id. at 8-9. Defendant admitted that there was nothing in his mental state that would hinder his ability to understand the nature of the proceedings against him. Id. at 10. The Court then found that defendant understood the nature of the proceedings and had been able to assist in his own defense. Id. at 10-11. In addition, counsel for defendant acknowledged that defendant had assisted her in his defense since returning from the Bureau of Prisons. Id. Defendant stated that he was fully satisfied with the counsel, representation, and advice given to him by defense counsel, and that his willingness to plead guilty was the result of his discussions with defense counsel and the United States. Id. at 12-13. Defendant acknowledged that "no one forced [him] or threatened [him to plead guilty]," and that he was "pleading guilty of [his] own free will because [he is] guilty." Id. at 15. Defendant

4

acknowledged that he was waiving his right to collaterally attack his conviction and sentence pursuant to 28 U.S.C. § 2255, except for claims of ineffective assistance of counsel. Id. at 22. Defendant was advised of the charge against him, and he admitted that he understood the charge to which he was pleading guilty. Id. at 27. In his own words, defendant told the Court what it is that he did to commit the offense. Id. at 28. The Court twice informed defendant of the charge against him, and defendant acknowledged that he had committed the offense. Id. at 27, 34-35. One exchange went as follows:

> THE COURT: Mr. Martinez, have you had a chance to talk to your counsel?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: Did you or did you not throw that device from your truck?
>
> THE DEFENDANT: As I spoke it earlier when I read out that thing, on August 11th, 2015, that I threw it out, that I knowingly possessed.
>
> THE COURT: The incendiary device?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: And you understand that that is both a destructive device and a firearm under the statute?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: And it wasn't registered to you; correct?
>
> THE DEFENDANT: Yes, ma'am.

Id., at 34-35.

Plaintiff also made a representation of the facts that it would be prepared to prove at trial. Id. at 31. These included the following:

> [T]he government would call witnesses, including civilian and law enforcement witnesses. That in the early morning hours of August 11th, 2015, beginning on Harvard and then moving on to 11th on the streets of Tulsa in the Northern District of Oklahoma, two civilian individuals came into contact with defendant when he was following them[;] they were in a vehicle, he was in a truck. These witnesses would testify that he pulled up next to them and they saw him light a plastic bottle on fire and thr[ew] it out of his truck window. They would testify that it was the defendant who engaged in this act. . . . [T]hose individuals would testify they called the police . . . and they gave a description of the vehicle and the defendant. . . . [L]aw enforcement officers would testify that they shortly came into contact with the defendant at a nearby QuikTrip and there was a short vehicle chase. And when they observed the defendant's truck, there was a burn on the door of the truck and there was a gas container and other plastic containers in the truck. There was also a rag on the window, driver's side window of the truck. The . . . ATF checked and . . . there was no destructive device registered to defendant with the National Firearms Registration and Traffic Record. . . . [The witnesses'] testimony would be that they altered the course of their vehicle because they thought it might be thrown at them . . . [a]nd the item burned on the street.

Id. at 31-33. Based on all the foregoing, the Court found that

> based upon defendant's admissions, demeanor and responsive answers to my questions, that the defendant is fully competent and capable of entering an informed plea, that the defendant is aware of the nature of the charges and the consequences of the plea, and that the plea of guilty is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense. The plea is therefore accepted and the defendant is now adjudged guilty of that offense.

Id. at 36.

Defendant's sentencing hearing was held on August 10, 2017, and the Court departed downward and sentenced defendant to the agreed Rule 11(c)(1)(C) sentence of seventy-two months imprisonment. Dkt. # 63. Judgment was entered on August 11, 2017 (Dkt. # 64), and defendant did not appeal his conviction. On May 24, 2018, defendant filed the instant motion pursuant to 28 U.S.C. § 2255. Dkt. # 65. Plaintiff filed a response (Dkt. # 82) to defendant's motion, and defendant filed a reply (Dkt. # 84).

**II.**

Defendant generally argues that his attorney was ineffective for failing to fully advise him about the consequences of pleading guilty and for failing to raise certain arguments. Broadly construing defendant's § 2255 motion and reply, he is asserting the following claims:

Claim One: defense counsel was ineffective for failing to advise defendant that plaintiff did not have evidence of the crime (Dkt. # 65, at 4);

Claim Two: defense counsel was ineffective for failing to object to the lack of a factual basis to support defendant's guilty plea (id. at 5);

Claim Three: defense counsel was ineffective for failing to advise defendant of a potential Commerce Clause challenge to the National Firearms Registration and Transfer Record (id. at 6); and

Claim Four: defense counsel was ineffective for failing to object to the magistrate judge's referral of defendant for medical evaluation, and defense counsel, plaintiff, and the Court coerced defendant to plead guilty in retaliation for defendant's original refusal to plead guilty (id. at 8).

To establish ineffective assistance of counsel, a defendant must show that his counsel's performance was deficient and that the deficient performance was prejudicial. Strickland v. Washington, 466 U.S. 668, 687 (1984); Osborn v. Shillinger, 997 F.2d 1324, 1328 (10th Cir. 1993). A defendant can establish the first prong by showing that counsel performed below the level expected from a reasonably competent attorney in criminal cases. Strickland, 466 U.S. at 687-88. There is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 688. In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Id. at 690. Moreover, review of counsel's performance must be highly deferential. "[I]t

is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Id. at 689. To establish the second prong, a defendant must show that counsel's deficient performance prejudiced the defendant to the extent that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694; see also Lockhart v. Fretwell, 506 U.S. 364, 369-70 (1993).

### III.

**Claims One and Two**

Defendant's first two claims can be addressed as one: that his attorney was ineffective because she failed to advise defendant that he should not plead guilty due to the insufficiency of plaintiff's evidence. Dkt. # 65. Defendant claims that "there was no Molotov cocktail seized from [defendant] and there was no operable Molotov cocktail presented as evidence." Id. at 4. Defendant further argues that he never admitted to possessing a Molotov cocktail. Id. at 5. But in his reply to plaintiff's response, defendant admits the facts he acknowledged at the change of plea hearing. Dkt. # 84, at 2. Defendant, however, insists that plaintiff failed to produce the actual Molotov cocktail in question and, therefore, there was insufficient evidence of defendant's guilt. Id. Finally, defendant argues that plaintiff failed to demonstrate that the alleged witnesses would indeed testify, because these witnesses did not testify in defendant's state court proceedings. Id. at 4.

These claims can be denied on two grounds. First, defendant stated to the Court multiple times, in his own words, that he understood the charges to which he was pleading guilty and specifically admitted to possessing the Molotov cocktail for which he was charged. See Dkt. ## 56,

58, 71. Under penalty of perjury, defendant "admitt[ed] . . . that he knowingly possessed a destructive device that was not registered with the National Firearms Registration and Transfer Record." Dkt. # 56, at 7.[2] Defendant also admitted to these facts in the petition to enter plea of guilty (Dkt. # 58), and at the change of plea hearing (Dkt. # 71). Defendant has provided no valid reason justifying a departure from the truth of his sworn statements at the change of plea hearing. See United States v. Hedman, 527 F.2d 20, 22 (10th Cir. 1975) ("[T]he truth and accuracy of [a defendant's] statements made at the Rule 11 proceedings should be regarded as conclusive in the absence of a believable, valid reason justifying a departure from the apparent truth of his Rule 11 statements."). Second, plaintiff set forth in detail the evidence it was prepared to present at trial. Dkt. # 71, at 31-33. Plaintiff stated that it was prepared to bring witnesses who would testify that defendant's car contained remnants of a Molotov cocktail, and that defendant threw the Molotov cocktail at their vehicle. Id. Just because these witnesses did not testify in state court does not mean that plaintiff would be unable to subpoena the witnesses to testify in federal court. In fact, in contrast to the state court proceedings, plaintiff was prepared to present more evidence proving defendant's guilt in the federal court proceedings, namely eyewitnesses and law enforcement witnesses. It is true that plaintiff did not present at the change of plea hearing the actual Molotov cocktail that defendant threw, thus making evidence of defendant's guilt circumstantial. However, there is no difference between direct and circumstantial evidence when it comes to a guilty plea; both can be used to obtain

---

[2] Although defendant suggests that the Molotov cocktail was inoperable and thus there was no evidence of a crime, the structure of the device and the intent of the defendant, not the operability of the actual Molotov cocktail, is what is relevant in classifying the Molotov cocktail as a destructive device. See United States v. Simmons, 83 F.3d 686, 687 (4th Cir. 1996) (holding that "a fully-assembled Molotov cocktail–defined as a device comprising a bottle, gasoline, and a rag–constitutes an 'incendiary . . . bomb' or 'similar device' under section 5845(f)," even if the defendant does not have a match or lighter to set off the device).

a conviction. See Holland v. United States, 348 U.S. 121, 140 (1954) ("Circumstantial evidence . . . is intrinsically no different from testimonial evidence."). Further, the witnesses that plaintiff was prepared to present would testify directly to defendant's possession of a Molotov cocktail. Plaintiff's failure to state that it was prepared to present the actual Molotov cocktail that defendant threw does not make plaintiff's evidence to which defendant admitted any less effective. For these reasons, defense counsel's alleged failure to advise defendant not to plead guilty does not meet the first prong set out in Strickland for ineffective assistance of counsel. Defense counsel acted as a reasonable attorney in advising defendant to plead guilty to a binding sentence below the advisory sentencing guideline. Claims one and two shall be denied.

**Claim Three**

Defendant's third claim is that his counsel was ineffective because she failed to raise a Commerce Clause argument. Dkt. # 65, at 6-7. Defendant claims that the United States Supreme Court decisions in United States v. Lopez, 514 U.S. 549 (1995), Morrison v. United States, 529 U.S. 598 (2000), and Jones v. United States, 529 U.S. 848 (2000), render 18 U.S.C. § 5861(d) unconstitutional. Dkt. # 84, at 2-3. Plaintiff, in turn, argues that of these cases, none is applicable to the National Firearms Act; that the Act is rather a valid exercise of Congress's taxing power, as well as its authority to enact any laws "necessary and proper" to carry out that power. Dkt. # 82, at 18.

For this proposition, plaintiff cites to the Tenth Circuit's decision in United States v. Cox, 906 F.3d 1170 (10th Cir. 2018). In that case, two defendants, charged with unlawful possession of firearms in violation of the National Firearms Act (NFA), challenged the Act as an unconstitutional exercise of Congress's powers and an infringement upon the defendants' Second Amendment right

to bear arms. Id. at 1174-75. The court in that case first held that the National Firearms Act was a valid exercise of Congress's taxing power, as well as its authority to enact any laws "necessary and proper" to carry out that power. Id. at 1179 (citing U.S. Const. art. I, § 8, cls. 1, 18). The court reasoned that "[t]he statute collects occupational and excise taxes from businesses and transactions involving listed firearms–which include . . . destructive devices," therefore making the NFA, "on its face, . . . a taxing scheme." Id. The court then noted that the United States Supreme Court had decided this issue eighty-one years prior and had come to the same conclusion. Id. (citing Sonzinsky v. United States, 300 U.S. 506 (1937)). The court stated that "though times may have changed since [the United States Supreme Court] decided Sonzinsky in 1937, it would not depart from the conclusion in that case, "that the NFA is a valid exercise of Congress's power [to enact a national tax]." Id. at 1183. The Tenth Circuit concluded Cox by holding that the firearms in question in that case fell outside the scope of the Second Amendment. Id. at 1187.

Defendant's Commerce Clause argument falls within the purview of Cox. As the Tenth Circuit held in that case, 18 U.S.C. § 5861(d) (the National Firearms Act) is a valid exercise of Congress's authority to tax and enact any laws "necessary and proper" to carrying out that power. Therefore, defense counsel was not ineffective for failure to raise a meritless Commerce Clause argument, and claim three shall be denied.

**Claim Four**

Defendant's fourth claim is that his counsel was ineffective for failing to object to the to the magistrate judge's referral of defendant for medical evaluation, and that defense counsel, plaintiff, and the Court coerced defendant to plead guilty in retaliation for his original refusal to plead guilty.

11

### i. Defense Counsel's Failure to Object to Referral for Medical Evaluation

As an initial matter, it seems that defendant does not understand the process that took place. It was not the magistrate judge who put into question defendant's competency to stand trial or to plead guilty; it was defense counsel's motion based on her interaction with defendant. Defense counsel requested a medical evaluation due to her serious concerns about defendant's mental health. See Dkt. # 20. Rather than this being a failure to act as a reasonable and effective attorney, this motion was proper; and indeed, had defense counsel not requested the medical evaluation, she would likely have committed legal malpractice.

The Tenth Circuit has spoken directly to this issue. In United States v. Boigegrain, 155 F.3d 1181, 1187 (10th Cir. 1998), the Tenth Circuit held "that when a lawyer has reason to believe that her client may not be mentally competent to stand trial, she does not render ineffective assistance of counsel by making her concerns known to the court." In that case, the defendant's counsel moved for defendant to be committed for mental health treatment after the defendant was charged for threatening a federal law enforcement officer and his family. Id. at 1183-84. After being found incompetent to stand trial, the defendant was confined until his mental evaluation was completed. Id. at 1184. The defendant filed a motion to waive his right to counsel, but that motion was delayed until the district court could find defendant to be competent. Id. The defendant then appealed this ruling. Id. Among other issues, the defendant claimed on appeal that his counsel was ineffective for raising the defendant's competency to stand trial. Id. at 1186. The Tenth Circuit first noted that this was an issue of first impression. Id. at 1187. However, the court stated that it was clear that the defense counsel did not act improperly by raising the defendant's mental competency. Id. at 1188. In fact, the court reasoned, defense counsel had a duty to raise his client's mental competency when

12

he believed his client was incompetent to stand trial. Id. Quoting the American Bar Association Standards, which are a guide under Strickland's first prong, the court stated:

> Defense counsel should move for evaluation of defendant's competence to stand trial whenever the defense counsel has a good faith doubt as to the defendant's competence. If the client objects to such a motion being made, *counsel may move for evaluation over the client's objection*. In any event, counsel should make known to the court and to the prosecutor those facts known to counsel which raise the good faith doubt of competence.

Id. (quoting ABA STANDARDS FOR CRIMINAL JUSTICE Standard 7-4.2(c)) (emphasis in original). The Tenth Circuit panel unanimously agreed that "defense counsel may move for a competency determination against a client's wishes without violating the Fifth or Sixth Amendment" and thus rejected the petitioner's claim. Id. at 1188-90.

Following Tenth Circuit precedent, the Court finds that defense counsel acted reasonably by moving for a medical evaluation to determine competency; therefore, defendant fails to demonstrate that the first prong of the Strickland test has been met. The Court finds that defense counsel was not ineffective for not objecting to a medical evaluation, and this portion of claim four shall be denied.

### ii. Coercion of Guilty Plea

Defendant claims that defense counsel, plaintiff, and the Court coerced him to plead guilty. To comport with the Due Process Clause of the Fourteenth Amendment, a guilty plea must be knowingly and voluntarily made. Fields v. Gibson, 277 F.3d 1203, 1212-13 (10th Cir. 2002) (citing Boykin v. Alabama, 395 U.S. 238, 242 (1969)). Under Strickland, "coercion by the accused's counsel can render a plea involuntary." United States v. Estrada, 849 F.2d 1304, 1306 (10th Cir. 1988); see also Fontaine v. United States, 411 U.S. 213, 215 (1973) ("It is elementary that a coerced plea is open to collateral attack."). However, "when a defendant expressly represents in open court

13

. . . that his plea is voluntary, he may not ordinarily repudiate his statements to the sentencing judge." Id. (internal quotation marks omitted). "[F]ull compliance . . . with Rule 11" is relevant that a guilty plea is not coerced. Runge v. United States, 427 F.2d 122, 124 (10th Cir. 1970). In addition, the plea colloquy is instructive on whether defendant knowingly and voluntarily pleaded guilty. See Fields, 277 F.3d at 1214.

In defendant's petition to enter plea of guilty, he acknowledged that he "kn[ew] that the Court will not permit anyone to plead 'GUILTY' who maintains . . . he is innocent and, with that in mind, and because I am 'GUILTY' and do not believe I am innocent, I wish to plead 'GUILTY[.]'" Dkt. # 58, at 3. Defendant indicated that his "mind [was] clear. [He was] not under the influence of alcohol or drugs, and [he was] not under a doctor's care." Id. at 4. He noted no medication that he had taken in the past seven days prior to pleading guilty. Id. Finally, defendant wrote that he "was found incompetent to proceed in this case, but was restored to competency with treatment." Id. In the plea agreement, defendant admitted to committing the offense charged in the indictment. Id. at 7. Defendant stated:

> I, ABRAHAM MARTINEZ, admit that on August 11, 2015, in the Northern District of Oklahoma, I knowingly possessed a destructive device that was not registered with the National Firearms Registration and Transfer Record. On that day, I possessed a "Molotov cocktail," made of a bottle that contain[ed] gasoline and a rag, which I knew would burn when lit. My attorney informed me that a "Molotov cocktail" is a destructive device under the law. I did not register it with the National Firearms Registration and Transfer Record.

Dkt. # 56, at 7. Defendant signed and acknowledged that

> [I have] read this agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. Further, I have consulted with my attorney and fully understand my rights with respect to sentencing which may apply to my case. No other promises or inducements have been made to me, other than those contained in this pleading. In addition, no one has threatened or forced me in

14

<u>any way to enter into this agreement</u>. Finally, I am satisfied with the representation of my attorney in this matter.

<u>Id.</u> at 15 (emphasis added). Defendant signed a statement that "[n]o agreements, representations or understandings have been made between the parties in this case, other than those which are explicitly set forth in this plea agreement and the Plea Agreement Supplement that the United States will file in this case[.]" <u>Id.</u> at 14. At the change of plea hearing, under oath, defendant responded in the negative that "anyone made any other or different promise or assurance to [him] of any kind that is not in the plea agreement in an effort to persuade [him] to plead guilty." Dkt. # 71, at 14. The Court asked defendant if anyone had forced or threatened him to plead guilty, and he responded that they had not. <u>Id.</u> at 15. In addition, defendant responded in the affirmative that he was "pleading guilty of [his] own free will because [he is] guilty[.]" <u>Id.</u> The Court found

> based upon defendant's admissions, demeanor and responsive answers to my questions, that the defendant is fully competent and capable of entering an informed plea, that the defendant is aware of the nature of the charges and the consequences of the plea, and that the plea of guilty is a knowing and voluntary plea supported by an independent basis in fact containing each of the essential elements of the offense.

<u>Id.</u> at 36.

Defendant offers no valid argument as to why his guilty plea was coerced. Defendant's plea agreement (Dkt. # 56), petition to enter a plea of guilty (Dkt. # 58), and plea colloquy (Dkt. # 71) establish that defendant's plea was knowingly and voluntarily made. <u>See</u> <u>United States v. Gigley</u>, 213 F.3d 509, 517 (10th Cir. 2000). Therefore, the Court finds that this portion of claim four shall be denied.

The Court has reviewed defendant's § 2255 motion and can find no other claims that could reasonably be construed as challenges to the validity of his guilty plea. Defendant requests an

15

evidentiary hearing on his § 2255 motion, but he has not asserted a colorable claim for relief. Thus, the record conclusively shows that defendant is entitled to no relief and the Court is not required to hold an evidentiary hearing before denying defendant's § 2255 motion. United States v. Marr, 856 F.2d 1471, 1472 (10th Cir. 1988).

## IV.

The Court will consider whether a certificate of appealability should issue as to defendant's § 2255 motion (Dkt. # 65). Rule 11 of the Rules Governing Section 2255 Proceedings instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Pursuant to 28 U.S.C. § 2253, the court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the court "indicates which specific issue or issues satisfy [that] showing." A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings. Slack v. McDaniel, 529 U.S. 473, 483-84 (2000) (citing Barefoot v. Estelle, 463 U.S. 880, 893 (1983)). After considering the record in this case, the Court concludes that a certificate of appealability should not issue as defendant has not made a substantial showing of the denial of a constitutional right. The record is devoid of any authority suggesting that the Tenth Circuit Court of Appeals would resolve the issues in this case differently.

**IT IS THEREFORE ORDERED** that defendant's motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 (Dkt. # 65) is **denied**.

**IT IS FURTHER ORDERED** that defendant's motion to expedite proceedings (Dkt. # 85) is **moot**.

**IT IS FURTHER ORDERED** that the Court declines to issue a certificate of appealability.

A separate judgment is entered herewith.

**DATED** this 20th day of September, 2019.

*[signature]*
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE